07 CV 10277

TISDALE LAW OFFICES
11 West 42nd Street, Suite 900
New York, NY 10036
Tel:    (212) 354-0025
Fax:    (212) 869-0067
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TAIWAN MARITIME TRANSPORT CO. LTD.,    :

                Plaintiff,    :    07 CV _____

       - against -    :    ECF CASE

SPOT ON SHIPPING LTD., a.k.a. SPOT ON    :
SHIPPING LTD. BVI., a.k.a. SPOT ON,
a.k.a CLAYTON STAR COMPANY LIMITED    :
a.k.a. CLAYTON STAR, SPOT ON (HONG
KONG) GROUP CORP. LTD. a.k.a. BROAD    :
ROAD (HONG KONG) GROUP CORP. LTD.,
SPOT ON INTERNATIONAL GROUP LTD.,    :
PEHW ASSET MANAGEMENT LIMITED
a.k.a. PEHW ASSET MANAGEMENT LTD.,    :
PEHW FUND LIMITED, ZHANGGANG
SHIPPING LIMITED, STEEL BRIGHT    :
HOLDINGS LIMITED, MARK GAINS
HOLDINGS LIMITED and    :
VESHDENE LIMITED,

              Defendants.    :

------------------------------------------------------------X

NOV 1 0 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

The Plaintiff, TAIWAN MARITIME TRANSPORT CO. LTD. (hereinafter "Plaintiff" or

"TMT"), by its attorneys, Tisdale Law Offices, as and for its Verified Complaint against the

Defendants, SPOT ON SHIPPING LTD. a.k.a. SPOT ON SHIPPING LTD. BVI a.k.a. SPOT

ON (hereinafter "Spot On") a.k.a. CLAYTON STAR COMPANY LIMITED a.k.a. CLAYTON

STAR (hereinafter "Clayton Star"),  SPOT ON (HONG KONG) GROUP CORP. LTD. a.k.a.

BROAD ROAD (HONG KONG) GROUP CORP. LTD. (hereinafter "Spot On HK GCL"),

SPOT ON INTERNATIONAL GROUP LIMITED (hereinafter "SPOT ON INT'L"), PEHW

ASSET MANAGEMENT LIMITED a.k.a. PEHW ASSET MANAGEMENT LTD. (hereinafter

"Pehw Asset"), PEHW FUND LIMITED (hereinafter "Pehw Fund"), ZHANGGANG

SHIPPING LIMITED (hereinafter "Zhanggang"), STEEL BRIGHT HOLDINGS LIMITED

(hereinafter "Steel Bright"), MARK GAINS HOLDINGS LIMITED (hereinafter "Mark Gains

Holdings") and VESHDENE LIMITED (hereinafter "Veshdene")(collectively referred to as the

"Defendants") allege, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Federal Rule of

Civil Procedure 9(h) and 28 United States Code § 1333.

2.    At all material times, Plaintiff was and still is an entity duly organized and

existing by virtue of foreign law.

3.    Upon information and belief, at all material times, the Defendant Spot On was

and still is an entity duly organized and existing by virtue of foreign law with places of business

in the British Virgin Islands and Hong Kong with offices at Room 1818-1823, 18th floor, Sun

Hung Kai Centre, No. 30 Harbour Road, Wanchai, Hong Kong.

4.    Upon information and belief, at all material times, the Defendant Pehw Asset was

and still is an entity duly organized and existing by virtue of foreign law.

5.    Upon information and belief, at all material times, the Defendant Pehw Fund was

and still is an entity duly organized and existing by virtue of foreign law.

6.    Upon information and belief, Pehw Asset notified the Plaintiff on or about May 7,

2007 by email that the name and contact details of "Spot On Shipping Limited, BVI" had been

changed to "Clayton Star Company Limited." As such, Clayton Star is a name by which Spot On is also known. *See email containing "important notice from PEHW ASSET MANAGEMENT LIMITED" annexed hereto as Exhibit "1."*

7.     Upon information and belief, at all material times, the Defendant Spot On HK GCL was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business in Hong Kong with a registered office at: suites 1818-1823, 18/F, Sun Hung Kai Centre, 30 Harbour Road, Wanchai, Hong Kong.

8.     Upon information and belief, the Defendant Spot On HK GCL is also known as Broad Road (Hong Kong) Group Corp. Ltd. *See Hong Kong Companies Registry annexed hereto as Exhibit "2."*

9.     Upon information and belief, at all material times, the Defendant Spot On INT'L was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business at: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, BVI.

10.     Upon information and belief, at all material times, the Defendant Zhanggang was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business in Hong Kong with a registered office at: Suites 1818-1823, 18/F, Sun Hung Kai Centre, 30 Harbour Road, Wanchai, Hong Kong.

11.     Upon information and belief, at all material times, the Defendant Steel Bright was and still is an entity duly organized and existing by virtue of foreign law with a registered address of: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, BVI.

12.     Upon information and belief, at all material times, the Defendant Mark Gains Holdings was and still is an entity duly organized and existing by virtue of foreign law with a

registered address at: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, BVI.

13.    Upon information and belief, at all material times, the Defendant Veshdene was and still is an entity duly organized and existing by virtue of foreign law with an address at: Room 1818-23 18/F Sun Hung Kai Center, 30 Harbour Road, Wanchai, Hong Kong.

14.    By way of a Forward Freight Agreement dated March 21, 2007 (hereinafter the "FFA"), Defendant Spot On agreed to sell and buy freight futures with the Plaintiff. *See March 21, 2007 FFA annexed hereto as Exhibit "3."*

15.    As defined by the Baltic Exchange, Forward Freight Agreements are a "means of hedging exposure to freight market risk through the trading of specified time charter and voyage rates for forward positions. Settlement is against a relevant route assessment published by the Baltic Exchange." The Baltic Exchange is "a membership organization at the heart of the global maritime marketplace" that provides "independent daily shipping market information." *See The Baltic Exchange,* http://www.balticexchange.com. Ocean freight is the charge assessed for the carriage of cargo by a vessel and is one of the most fundamental components of maritime commerce. Freight is considered so integral to the maritime industry that it has been said that "freight earnings are a part of the vessel as much as the ship's tackle." *Rush v. Delaware & Chesapeake S.S. Co.,* 10 Supp. 497, 501 (E.D. Pa. 1935).

16.    Specifically, TMT and Spot On entered into a maritime contract for the swap of the future value of ocean freight. This contract specifies the type of vessel to be used, the routes upon which said vessels would travel and the duration of the agreement. This agreement, dated March 21, 2007, specifies in paragraph one of the contract that the "contract route" is to be the Baltic Capesize Index average of Routes (8/9/10/11)." In so stating the parties have agreed that

only particular ocean routes will be used and that such voyages will be carried out by Capesize vessels. *See March 21, 2007 FFA annexed hereto as Exhibit "3."*

    17.    Forward Freight Agreements have been found to be maritime cases entitled to process of maritime attachment in the following cases: Brave Bulk Transport, Ltd. v. Spot On Shipping, Ltd, et al., 07 CV 04546 (CM); Setsea v. Source Link et. al., 07 CV 06230 (DAB); C. Transport Panamax Ltd. v. North America Steamships Ltd., a.k.a. N.A.S.L., 06 CV 13178 (RLC); Daeyang Shipping Co. Ltd. v. Navitrans Maritime Inc., 04 CV 08050 (VM); Deiulemar v. Source Link Shipping Co. Ltd., 07 CV 02983 (SAS); Deiulemar v. Spot On Shipping Ltd., 07 CV 03820 (VM); Eurotrade Inc., Liberia v. Source Link Shipping Co. Ltd., BVI, 07 CV 3172 (SAS); Pan Oceanic Maritime Inc. v. Source Link Shipping Co. Ltd., 07 CV 03089 (CM); Perseveranza Di Navigazione S.P.A. v. Source Link Shipping Co. Ltd., 07 CV 03091 (RPP); Taiwan Maritime Transport Co. Ltd. v. Navitrans Maritime Inc. and Navigation Maritime Inc., 06 CV 13564 (RJH).

    18.    Maritime Jurisdiction is conferred where the contract has "reference to maritime service or maritime transactions." *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.,* 542 U.S. 14, 24(2004) quoting *North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.,* 249 U.S. 119, 125 (1919). Where "the subject matter of the contract relates to a ship in its use as such, *or to commerce* or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." *Ingersoll Milling Mach. Co. v. M/V BODENA,* 829 F.2d 293, 302 (2d Cir. 1987). There is no requirement that a specific cargo or a specific vessel be referenced to meet this definition.

    19.    Federal Admiralty jurisdiction has been found to exist in comparable cases. For

example, in Brave Bulk v. Spot On et. al., 07 CV 4546 (CM), Judge McMahon held that Forward Freight Agreements "are sufficiently part of the business of maritime commerce to confer admiralty jurisdiction." *See October 30, 2007 Decision and Order, Brave Bulk v. Spot On et. al., 07 CV 4546 (CM).* Further, courts in the United States have found that federal maritime jurisdiction exists over contracts of all types of marine insurance, including, cargo, hull, P&I, etc., *see Simon v. Intercontinental Transport (ICT) B.V.*, 882 F. 2d 1435 (2 d Cir. 1989), *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955), as well as to contracts to procure marine insurance, See, *Romen Inc. v. Price-Forbes*, 824 F. Supp. 206 (S.D. Fla. 1992). Contracts for the winter storage of boat, on land, which cover the period the boats will not be in navigation, have been found to be a maritime contract. *See Omaha Indemnity v. Whaleneck Harbor Marina*, 610 F. Supp. 154 (E.D.N.Y. 1985). A lease for the use of ocean containers by a vessel owner on any of the Owner's many vessels, has been found to be maritime even though the containers may have spent less time on the defendant's vessels than on land at the terminals, or in transport by truck, rail or air. *See CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F. 2d 377 (2d Cir. 1982).

20.     This case is analogous to the United States Supreme Court's recent finding in *Exxon Corp v. Central Gulf Lines,* 500 U.S. 603, that a marine fuel requirement's contract is maritime. *Id.* In *Exxon,* the Court reasoned that a contract for the future sale of fuel oil was maritime in nature because the value of the fuel related to maritime commerce. *Id.* at 613. Importantly, in *Exxon,* the Supreme Court greatly expanded the scope of admiralty jurisdiction for contracts by eliminating the "preliminary services" rule that kept contracts such as these from being conferred admiralty jurisdiction. *Id.* at 608; citing *The Thames,* 10 F. 848 (S.D.N.Y.

1881). In *Exxon Corp.*, the Court found that, not only did admiralty jurisdiction apply to those supplies where Exxon was the physical supplier of the fuel, but also to those contracts where the fuel was provided and delivered by a third party at the request of Exxon. In that case, and as later reiterated by the Supreme Court in *Kirby*, the Court stated: "The 'fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.' (citing *Exxon, supra*). The conceptual approach vindicates that interest by focusing the court's inquiry on whether the principal objective of a contract is maritime commerce." *Kirby*, at 25. In *Kirby*, the Supreme Court recognized the changes in maritime transportation and commerce which have occurred in recent times from traditional ocean carriage.

21.     Following the reasoning set out in *Exxon*, this Court recently determined that a 'cooperation contract' is a maritime contract because it provides a "shipping management function [that] increase[s] the efficiency and decrease[s] the cost of... shipments of large quantities of various metals." *See Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*, No. 05 Civ. 10271 (RCC), 411 F. Supp.2d 386, 2006 AMC 1076, 1084 (S.D.N.Y. January 24, 2006). In so finding, this Court reasoned, "it is of no moment in the Exxon analysis that STC will seek future charter parties, or act as an agent of ICS in so doing. Indeed STC's contract... is similar to the maritime contract in *Exxon* where Exxon promised to supply fuel even if by way of a third party." *Id.*

22.     While FFAs do seek to minimize financial risk, the risk they seek to minimize is of fluctuating ocean freight rates for specific groups of vessels traveling identified and agreed to ocean routes. The financial nature of these transactions does not compromise their maritime status. As indicated above, maritime jurisdiction explicitly includes maritime "transactions" that

7

relate to maritime "commerce."

23.     During the course of the Agreement, a dispute arose between the parties regarding Defendant's failure to pay the losses sustained by it in breach of the Agreement.

24.     The FFA provided for settlement dates of the last day of three contract months: April, May and June of 2007.

25.     Despite due demand for payment, Defendant has failed to remit payment to Plaintiff in breach of the FFA.

26.     As a result of Spot On's breach of the FFA contract, Plaintiff has suffered a loss in the total principal sum of **$873,839.65**, as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys fees. *See ICAP HYDE Settlement Advices and corresponding TMT invoices annexed hereto as Exhibit "4."*

27.     Pursuant to clause 16 of the FFA contract all disputes arising thereunder are to be submitted to the English High Court of Justice with English law to apply.

28.     Plaintiff is currently preparing to commence litigation against the Defendants in the English High Court on its claims as described hereinabove.

29.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in English High Court proceedings conducted pursuant to English Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts:

|   | | |
|---|---|---|
| A.  Principal claim: | | $873,839.65 |
| April Settlement: | $283,269.67 | |
| May Settlement: | $454,481.77 | |
| June Settlement: | $136,088.21 | |

8

| B. | Estimated interest on the principal claims at 6.5% for three years: | $186,671.33 |
| C. | Attorneys' fees and other recoverable costs: | $200,000.00 |

Total:    **$1,260,510.90**

## DEFENDANTS' RELATIONS

### I.    Spot On (Hong Kong) Group Corporation Limited

30.    Upon information and belief, Spot On HK GCL is the alter ego of Spot On because it dominates and disregards Spot On's corporate form to the extent that Spot On HK GCL is actually carrying on Spot On's business and operations as if same were its own.

31.    Upon information and belief, Defendant Spot On HK GCL is an alias, or agent of Defendant Spot On and/or Spot On is an alias, or agent of Spot On HK GCL.

32.    Upon information and belief, Defendants Spot On HK GCL and Spot On are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, and used to carry on such individuals' own business. Further, the Defendants share the same office at the following address: Room 1818-1823, 18th Floor, Sun Hung Kai Centre, No. 30 Harbour Road, Wanchai, Hong Kong.

33.    Upon information and belief, Spot On HK GCL is controlled by Ms. Wei-lu Zhang, Spot On INT'L and Mark Gains Holdings. Spot On INT'L owns 100% of the shares of Spot On HK GCL, all of which were transferred to it from three members of the Zhang family (Wei-lu Zhang, Xiao-jun Zhang and Xi-tong Zhang) on September 26, 2006. Mark Gains Holdings is, upon information and belief, the sole director of Spot On HK GCL. Spot On INT'L and Mrs. Wei-lu Zhang are former directors of Spot On HK GCL. They both resigned on May 14, 2007 according to Spot On HK GCL's "companies registry" and annual return.

9

34.    Upon information and belief, Defendant Spot On HK GCL has no separate, independent identity from Defendant Spot On as they are separately incorporated for the purpose of fraudulently avoiding payment of just debts to their creditors.

35.    Upon information and belief, Spot On and Spot On HK GCL's names are used interchangeably in the industry. *See Baltic Exchange Listing of Several Fixtures including the fixture of the 'Kassos Warrior' annexed hereto as Exhibit "5."* This ship was chartered to 'Zhanggang (Spot On).' Zhanggang is owned by Spot On HK GCL. *See further Fixture Recap of the MV Nord Energy annexed hereto as Exhibit "6" and compare with the Baltic Exchange listing of the MV Nord Energy in Exhibit "5."*

36.    In the alternative, Defendant Spot On HK GCL is merely a shell corporation through which Spot On conducts its business.

37.    In the further alternative, Defendants Spot On HK GCL and Spot On are partners and/or are joint venturers.

38.    In the further alternative, Defendants Spot On HK GCL and Spot On are affiliated companies such that the Defendant Spot On HK GCL is now, or will soon be, holding assets belonging to Defendant Spot On and vice versa.

## II.    Spot On International Group Limited

39.    Upon information and belief, Spot On INT'L is the alter ego of Spot On and Spot On HK GCL because it dominates and disregards Spot On/Spot On HK GCL's corporate form to the extent that Spot On INT'L is actually carrying on Spot On/Spot On HK GCL's business and operations as if same were its own.

40.    Upon information and belief, Defendant Spot On INT'L is an alias, or agent of

Defendants Spot On/Spot On HK GCL and/or Spot On/Spot On HK GCL is an alias, or agent of Spot On INT'L.

41.    Upon information and belief, Defendants Spot On INT'L, Spot On and Spot On HK GCL are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, and used to carry on such individuals' own business.

42.    Upon information and belief, Defendant Spot On INT'L owns 100% of the shares of Spot On HK GCL which were transferred to it from three members of the Zhang family (Wei-lu Zhang, Xi-tong Zhang and Xiao-jun Zhang) on September 26, 2006 according to the Annual Return of Spot On HK GCL dated April 26, 2007.

43.    Upon information and belief, Defendant Spot On INT'L was the director of Spot On HK GCL until May 14, 2007.

44.    In the alternative, Defendant Spot On INT'L is merely a shell corporation through which Spot On and Spot On HK GCL conduct their business.

45.    In the further alternative, Defendants Spot On INT'L, Spot On and Spot On HK GCL are partners and/or are joint venturers.

46.    In the further alternative, Defendants Spot On INT'L, Spot On and Spot On HK GCL are affiliated companies such that the Defendant Spot On INT'L is now, or will soon be, holding assets belonging to Defendants Spot On/Spot On HK GCL and vice versa.

### III.    Mark Gains Holdings Limited

47.    Upon information and belief, Mark Gains Holdings is the alter ego of Spot On, Spot On HK GCL and Spot On INT'L because it dominates and disregards Spot On/Spot HK GCL/Spot On INT'L's corporate form to the extent that Mark Gains Holdings is actually

11

carrying on Spot On/Spot On HK GCL/Spot On INT'L's business and operations as if same were its own.

48.    Upon information and belief, Defendant Mark Gains Holdings is an alias, or agent of Defendants Spot On/Spot On HK GCL/Spot On INT'L and/or Spot On/Spot On HK GCL/Spot On INT'L is an alias, or agent of Mark Gains Holdings.

49.    Upon information and belief, Defendants Mark Gains Holdings and Spot On/Spot On HK GCL/Spot On INT'L are commonly beneficially owned, and commonly managed, controlled and dominated by the Zhang family, and used to carry on such individuals' own business.

50.    Upon information and belief, Defendants Mark Gains Holdings, Steel Bright and Spot On INT'L have the same address: PO Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.

51.    Upon information and belief, Mark Gains Holdings succeeded Spot On INT'L as a director of Spot On HK GCL on or about May 14, 2007.

52.    Upon information and belief, Defendant Mark Gains Holdings has no separate, independent identity from Defendants Spot On/Spot On HK GCL/Spot On INT'L.

53.    In the alternative, Defendant Mark Gains Holdings is merely a shell corporation through which Spot On/Spot On HK GCL/Spot On INT'L conducts its business.

54.    In the further alternative, Defendants Mark Gains Holdings and Spot On/Spot On INT'L are partners and/or are joint venturers.

55.    In the further alternative, Defendants Mark Gains Holdings and Spot On/Spot On HK GCL/Spot On INT'L are affiliated companies such that the Defendant Mark Gains Holdings

12

is now, or will soon be, holding assets belonging to Defendants Spot On/Spot On HK GCL/Spot On INT'L and vice versa.

### IV.    Pehw Asset Management Limited and Pehw Fund Limited

56.    Upon information and belief, Pehw Asset and Pehw Fund are the alter egos of Spot On because they dominate and disregard Spot On's corporate form to the extent that Pehw Asset and/or Pehw Fund is actually carrying on Spot On's business and operations as if same were its own.

57.    Upon information and belief, Defendant Pehw Asset and/or Pehw Fund are aliases, or agents of Defendant Spot On and/or Spot On is an alias, or agent of Pehw Asset and/or Pehw Fund.

58.    Upon information and belief, Defendants Pehw Asset, Pehw Fund and Spot On are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, and used to carry on such individuals' own business.

59.    Specifically, Pehw Asset is, upon information and belief, the 100% shareholder of Spot On and Pehw Fund has acquired 100 % equity of Spot On. *See email containing "important notice from PEHW ASSET MANAGEMENT LIMITED" annexed hereto as Exhibit "1." See further "Spot On Email from 30/03/2007" annexed hereto as Exhibit "7"* stating that Pehw Fund is 100% owner of Spot On and that the seller's name should be changed from "Spot On Shipping Limited" to Pehw Asset Management Limited" in all FFA contracts.

60.    Upon further information and belief, Sammy Yu of "Spot On Shipping" whose email name is "SPOT ON – SAMMY [mailto:shipping@spoton-hk.com], is an agent authorized to speak on behalf of Pehw Asset and the Pehw Fund. It is of note that Sammy Yu is also

Zhanggang's chartering manager as well as the contact between ICAP Hyde Derivatives Limited and Spot On in drafting the March 21, 2007 FFA. *See the March 21, 2007 FFA annexed hereto as Exhibit "3," see further Exhibit "8" which indicates that Sammy Yu is the manager of Zhanggang.*

61.     In the alternative, Defendant Pehw Asset and/or Pehw Fund are merely shell corporations through which Spot On conducts its business.

62.     In the further alternative, Defendants Pehw Asset, Pehw Fund and Spot On are partners and/or are joint venturers.

63.     In the further alternative, Defendants Pehw Asset, Pehw Fund and Spot On are affiliated companies such that the Defendants Pehw Asset and/or Pehw Fund are now, or will soon be, holding assets belonging to Defendant Spot On and vice versa.

## V.     Zhanggang Shipping Limited

64.     Upon information and belief, Zhanggang is the alter ego of Spot On because it dominates and disregards Spot On's corporate form to the extent that Zhanggang is actually carrying on Spot On's business and operations as if same were its own.

65.     Upon information and belief, Zhanggang and Spot On have a common address and place of business at: Suites 1818-23, 18th Floor, Sun Hung Kai Centre, 30 Harbour Road, Wanchai, Hong Kong.

66.     Upon information and belief, this is also the address of Spot On HK GCL and Veshdene which are two other alter egos of Spot On.

67.     Upon information and belief, Zhanggang and Spot On share a common email address: shipping @ spoton-hk.com. *See Lloyd's MIU Investigation Report on Zhanggang at*

14

*page 2 annexed hereto as Exhibit "8."*

68.    Upon information and belief, Lloyd's MIU telephoned Zhanggang and were told that Zhanggang is a "ship charterer."

69.    Upon information and belief, both Spot On HK GCL, Spot On and Zhanggang are owned and run by the Zhang family. Madam Wei-Lu Zhang reported to be the president of Zhanggang was also a principal director of Spot On HK GCL. *See excerpt from Spot On (HK) GCL's Annual Return annexed hereto as Exhibit "9" and compare with Exhibit "8."*

70.    Further, Zhanggang's chartering manager is Sammy Yu. Sammy Yu was also the contact between ICAP Hyde Derivatives Limited and Spot On in drafting the March 21, 2007 FFA. *See the March 21, 2007 FFA annexed hereto as Exhibit "3," see further Exhibit "5" which indicates that Sammy Yu is the manager of Zhanggang.*

71.    Upon information and belief, Spot On and Zhanggang's names are used interchangeably in the industry. *See Baltic Dry Index Dry Cargo Fixture Summary annexed hereto as Exhibit "10." See also The Baltic Exchange Listing of Fixture of the 'Kassos Warrior' attached hereto as Exhibit "5."*

72.    Upon information and belief, Defendant Zhanggang is an alias, or agent of Defendant Spot On and/or Spot On is an alias, or agent of Zhanggang.

73.    Upon information and belief, Defendants Zhanggang and Spot On are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, including Mrs. Wei-Lu Zhang and Sammy Yu, and used to carry on such individuals' own business.

74.    Upon information and belief, Defendant Zhanggang has no separate, independent

15

identity from Defendant Spot On as they use their names interchangeably with design to fraudulently avoid payment of just debts to their creditors.

75.    In the alternative, Defendant Zhanggang is merely a shell corporation through which Spot On conducts its business.

76.    In the further alternative, Defendants Zhanggang and Spot On are partners and/or are joint venturers.

77.    In the further alternative, Defendants Zhanggang and Spot On are affiliated companies such that the Defendant Zhanggang is now, or will soon be, holding assets belonging to Defendant Spot On and vice versa.

### VI.    Steel Bright Holdings Limited

78.    Upon information and belief, Defendant Steel Bright is an alias, or agent of Defendant Zhanggang and/or Zhanggang is an alias, or agent of Steel Bright.

79.    Upon information and belief, Defendants Steel Bright and Zhanggang are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, and used to carry on such individuals' own business.

80.    Specifically, Steel Bright owns 100% of the shares of Zhanggang and Steel Bright is Zhanggang's sole director according to Zhanggang's 01-02-07 filing with the Companies Registry.

81.    Steel Bright's address is P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, BVI.  This is also the address of Spot On INT'L and Mark Gains Holdings Limited who are or have been the sole shareholders and directors of Spot On HK GCL.

82.    Upon information and belief, Defendant Steel Bright has no separate, independent

16

identity from Defendant Zhanggang as Steel Bright exists for the purpose of fraudulently avoid payment of just debts to their creditors.

83.    Furthermore, Defendant Steel Bright is the alter ego of Defendant Zhanggang because Steel Bright dominates and disregards Zhanggang's corporate form to the extent that Steel Bright is actually carrying on the business and operations of Zhanggang as if the same were its own.

84.    In the alternative, Defendant Steel Bright is merely a shell corporation or pass through entity through which Zhanggang conducts its business.

85.    In the further alternative, Defendants Steel Bright and Zhanggang are partners and/or are joint venturers.

86.    In the further alternative, Defendants Steel Bright and Zhanggang are affiliated companies such that the Defendant Steel Bright is now, or will soon be, holding assets belonging to Defendant Zhanggang and vice versa.

**VII.    Veshdene Limited**

87.    Upon information and belief, Defendant Veshdene is an alias, or agent of Defendant Zhanggang and/or Zhanggang is an alias, or agent of Veshdene.

88.    Upon information and belief, Defendants Veshdene and Zhanggang are commonly beneficially owned, and commonly managed, controlled and dominated, by the same individuals, and used to carry on such individuals' own business.

89.    Defendants Veshdene and Zhanggang share an office at the following address: Room 1818-1823 18/F, Sun Hung Kai Centre, 30 Harbour Road, Wanchai, Hong Kong.

90.    Upon information and belief, Defendant Veshdene has no separate, independent

17

identity from Defendant Zhanggang as Veshdene exists for the purpose of fraudulently avoid payment of just debts to their creditors.

91.    Furthermore, Defendant Veshdene is the alter ego of Defendant Zhanggang because Veshdene dominates and disregards Zhanggang's corporate form to the extent that Veshdene is actually carrying on the business and operations of Zhanggang as if the same were its own.

92.    Upon information and belief, Defendant Veshdene acts as paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Zhanggang, and/or receive payments being made to Defendant Zhanggang.

93.    Upon information and belief, Defendant Zhanggang uses Defendant Veshdene as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

94.    Further, Zhanggang and a third party entered into a charter party for the charter of the Vessel "MV NORD ENERGY" (hereinafter the "Vessel"). Although Veshdene was not named in the charter party for the Vessel and had no known formal relationship to the charterers of the Vessel it paid an installment of the hire due and owning to the third party. *See MV Nord Energy Fixture Recap and "Single Customer Credit Transfer" attached hereto as Exhibit "8."*

95.    It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying charter parties.

96.    Further, Defendants Veshdene and Spot On share the same banking institution, swift codes and have the same last four digits of their accounts. Specifically, Veshdene's

18

account at HSBC Hong Kong ends in *8838. Spot On's account listed on the FFA contract between Spot On and TMT also ends in *8838. The Swift Codes for both parties are HSBCHKHHHKH. *Compare "Single Customer Credit Transfer attached hereto as Exhibit "11" with the March 21, 2007 FFA Contract attached hereto as Exhibit "3" at ¶ 18.*

97.    In the alternative, Defendant Veshdene is merely a shell corporation through which Zhanggang conducts its business.

98.    In the further alternative, Defendants Veshdene and Zhanggang are partners and/or are joint venturers.

99.    In the further alternative, Defendants Veshdene and Zhanggang are affiliated companies such that the Defendant Veshdene is now, or will soon be, holding assets belonging to Defendant Zhanggang and vice versa.

100.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA, J.P. Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank N.A. which are believed to be due and owing to the Defendants.

101.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching any assets of the Defendants held by

the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and federal common law attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA, J.P. Morgan Chase, Standard Chartered Bank, and/or Wachovia Bank N.A. which are due and owing to the Defendants, in the amount of **$1,260,510.90** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint;

C.    That this Court recognize and confirm any foreign judgment/award of costs on the claims had herein as a judgment of this Court;

D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

E.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: November 13, 2007
New York, NY

The Plaintiff,
TAIWAN MARITIME TRANSPORT CO. LTD.,

By:

Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT 5263)
TISDALE LAW OFFICES
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (Phone)
(212) 869-0067 (Fax)
ldavies@tisdale-law.com
ttisdale@tisdale-law.com

21

## ATTORNEY VERIFICATION

State of Connecticut   )
                    )     ss: Southport
County of Fairfield   )

    1.     My name is Lauren C. Davies.

    2.     I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

    3.     I am the attorney for the Plaintiff in this action.  I am fully authorized to make this Verification on its behalf.

    4.     I have read the foregoing Verified Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

    5.     The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

    6.     The source of my knowledge is information and records furnished to me by the Plaintiff and its solicitors, all of which I believe to be true and accurate.

    7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated: November 13, 2007
       Southport, CT

                                 Lauren C. Davies

# EXHIBIT 1

## Jonathan Goldfarb

| | |
|---|---|
| **From:** | Judy Hsieh [jhsieh@colonmail.com] |
| **Sent:** | 27 August 2007 07:06 |
| **To:** | Yvonne Chen |
| **Subject:** | Spot On - recap & announcement |
| **Attachments:** | FFA Trade Recap292580.pdf |

-----Original Message-----
From: Dryfreight [mailto:dryfreight@icap.com]
Sent: Wednesday, May 09, 2007 11:25 PM
To: CEO; ffa; Katy Chen
Subject: Spot On


Please find below an announcement regarding Spot On Shipping.

Kind regards,


Paul Ingram
Dry FFA Desk



Direct Line: +44 20 7000 5357
Fax:        +44 20 7000 5942
Email:      paul.ingram@icap.com


ICAP Hyde Derivatives Limited
2 Broadgate
London
EC2M 7UR
United Kingdom

-----Original Message-----

Sent: 07 May 2007 14:39
To: Dryfreight
Subject:

Dear Brokers,

Below is an important notice from PEHW ASSET
MANAGEMENT LIMITED.

PEHW ASSET MANAGEMENT LIMITED has successfully acquired 100% shares of SPOT ON SHIPPING LIMITED, BVI which was previously a subsidiary of Spot On Group and independently operating FFA business. PEHW ASSET MANAGEMENT LIMITED hereby announces that the name and contact details of SPOT ON SHIPPING LIMITED, BVI have been changed.

SPOT ON SHIPPING LIMITED, BVI has changed its name to CLAYTON STAR COMPANY LIMITED. Effective from the date of this notice, all FFA business/transaction information and FFA market information for the account of SPOT ON SHIPPING LIMITED, BVI should be sent to and contact with CLAYTON STAR COMPANY LIMITED.

Best regards.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*"

The data and information (collectively called Information) herein is the sole property of ICAP. The Information is confidential, may be legally privileged and is intended solely for the use of the individual or entity to whom it is addressed. Unauthorised disclosure, copying or distribution of the Information is strictly prohibited and the recipient of the Information shall not redistribute the Information in any form to a third party. If you received this Information in error please tell us by reply (or telephone the sender) and delete all copies on your system.

References in this Information to ICAP are references to ICAP plc, a company incorporated in England with registered number 3611426 whose registered office is 2 Broadgate, London, EC2M 7UR and where the context requires, includes its subsidiary and associated undertakings. As applicable, certain companies within the ICAP group are authorised and regulated by the Financial Services Authority. Any investment research sent from ICAP will provide an impartial and objective assessment of the securities, companies or other matters that are the subject of their research and our Conflicts of Interest Management Policy regarding investment research can be viewed by requesting a copy from your usual contact at ICAP. Please visit www.icap.com for further regulatory information including details regarding the European eCommerce Directive.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*"

We have taken precautions to minimise the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. "

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT 2




| Search ▼ | Product ▼ | Shopping ▼ | About e-Search ▼ | Logout ▼ |

Welcome!

System Clock: 27-SEP-2007 13:33:12 GMT +0800

Company Name Search

Your Search: LEFT PARTIAL match with 'spot on' , CR No.: = 0794937

| | |
|---|---|
| CR No.: | 0794937 |
| Company Name: | SPOT ON (HONG KONG) GROUP CORPORATION LIMITED<br>華熹(香港)集團股份有限公司 |
| Company Type: | Local Company |
| Date of Incorporation: | 24-APR-2002 |
| Company Status: | Private |
| Active Status: | Live |
| Remarks: | - |
| Winding Up Mode: | - |
| Date of Dissolution: | - |
| Register of Charges: | Available |
| Important Note: | - |

Name History

| Effective Date | Name Used |
|---|---|
| 30-APR-2004 | SPOT ON (HONG KONG) GROUP CORPORATION LIMITED<br>華熹(香港)集團股份有限公司 |
| 24-APR-2002 | BROAD ROAD (HONG KONG) GROUP CORPORATION LIMITED<br>富路(香港)集團股份有限公司 |

Please select if you want to perform other searches or order other products for this company:

Image Record (including Document Index) ▾   GO

Please select the Order Type:

Order certified screen print          HK$140.00 plus additional handling charges for different delivery mode(*)

(*) Additional handling charges for different delivery mode will be shown when check out shopping cart.

Back

ICRIS CSC Companies Registry, The Government of the Hong Kong Special Administrative Region.

# EXHIBIT 3

# ICAPHYDE

FFABA 2005 (TM)

### FORWARD FREIGHT AGREEMENT BROKERS ASSOCIATION ('FFABA')
### FORWARD FREIGHT 'SWAP' AGREEMENT

**Trade Ref**        292580

**Contract Date**    21 March 2007

The purpose of this confirmation is to state the terms and conditions of the forward freight swap agreement entered into between:

**Seller**

**SPOT ON SHIPPING LIMITED**

Room 1818-1823, 18th floor,
Sun Hung Kai Centre
No.30 Harbour Road,
Wanchai
Hong Kong

Contact: Sammy Yu
Phone: +852-3667 9091
Fax: +852-3667 9096
Email: ffa@clayton-star.com

and

**Buyer**

**TAIWAN MARITIME TRANSPORT CO. LTD, TAIPEI**

8F. No. 126 Sec. 1, Jianguo N. Rd.
Jhongshan District
Taipei City 104
Taiwan R.O.C.
Taiwan
Contact: Nobu Morimoto
Phone: +88621750216
Fax: +88627180136

**Trade Ref**    292580

This agreement between the parties as constituted by this confirmation is referred to as the "Agreement"

Until superseded by notice information in subsequent confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Agreement may properly be served.

## 1. Contract Route

As per BCI TC - Baltic Capesize Index Average of Routes (8/9/10/11) as defined on the Contract Date including any relevant official forthcoming amendments published at the Contract Date which will become effective prior to the settlement of this Agreement.

## 2. Contract Rate

USD 78500.00 per Day

## 3. Contract Quantity

46 Days

## 4. Contract Months

April 2007, May 2007, June 2007

## 5. Contract Period

Average of All BCI Index days of the contract month(s) up to and including the Settlement date(s)

## 6. Settlement Date

The last Baltic Exchange Index publication day of each Contract Month

## 7. Settlement Rate

(a) The Settlement Rate shall be the average of the rates for the Contract Route(s) published by the Baltic Capesize Index over the Settlement Period defined as All of the Baltic Capesize Index publication days of the Contract Month(s) up to and including the Settlement Date.

(b) If for any reason the Baltic Capesize Index cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the "Panel") to determine an appropriate rate, which determination will be final and binding on both parties.

(c) Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d) The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Capesize Index and its members and the FFABA and its members (the "Indemnified Persons") against all liabilities, actions, demands,

**Trade Ref**   292580

costs and expenses incurred by any of them arising directly out of or in connection with the formation of the Panel and any determination made by the Panel.

(e) As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

**8. Settlement Sum**

The "Settlement Sum" is the difference between the Contract Rate and the Settlement Rate multiplied by the Contract Quantity. If the Settlement Rate is greater than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is less than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

**9. Payment Procedure and Obligations**

(a) Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or (5) London business days after the Settlement Date and for this purpose a "London business day" means a day (other than Saturday or Sunday) on which commercial banks are open for business in London). The Settlement Sum will be deemed "paid" when it has been received into the bank account designated by the payee.

(b) Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars. The cost incurred in effecting payment shall be for the account of the payer. Payment may only be affected directly between parties. The Settlement Sum shall be paid without any deduction or set off unless agreed by the Buyer and Seller in writing.

**10. ISDA Master Agreement**

This Agreement incorporates by reference the 1992 ISDA Master Agreement (Multicurrency - Cross Border) (without Schedule) as if it were fully set out in this Agreement and with only the following specific modifications and elections:

(a) Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

(b) Seller is the Calculation Agent;

(c) The most current published set of ISDA ® Commodity Definitions and ISDA Definitions shall apply;

(d) Credit Event Upon Merger is applicable to both parties;

(e) For the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

(f) The Termination Currency is United States dollars;

(g) The Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly ; and

(h) Local Business Day or banking day shall each refer to such a day in London,

(such form, as modified, the "Standard Agreement" and this Agreement, including the incorporated Standard Agreement,

**Trade Ref** 292580

shall govern the transaction referred to in and constituted by this Agreement except as expressly modified by this Agreement.

**11. Capacity and Good Standing**

In addition to the representations contained in Section 3 of the Standard Agreement, each party warrants that:

(a) It is duly organized and validly exists under the jurisdiction of its organization or incorporation, and is solvent and in good standing;

(b) It has the power to execute, deliver and perform this Agreement;

(c) All governmental and other consents that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d) In the event that either party to this Agreement is a person organized under, domiciled in, or having principle place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in paragraph 1a(12) of the Commodity Exchange Act (7 U.S.C. paragraph 1a(12), as amended).

**12. Telephone Recording**

Each party consents to the recording of telephone conversations in connection with this Agreement.

**13. Commission**

Each of the parties agrees to pay brokers' commission to any broker (a "Broker") as agreed with any Broker.

**14. Non-Assignability**

Except as provided in Section 7 of the Standard Agreement, this Agreement is non-assignable unless otherwise agreed in writing between the parties to this Agreement.

**15. Principal To Principal**

This is a principal to principal contract with settlement directly between the two parties. Both parties agree that any Broker shall be under no obligation or liability in relation to this Agreement. Both parties agree jointly and severally to indemnify and hold harmless any Broker against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages, costs and expenses suffered or incurred are to be settled directly by or between the two parties.

**16. Law and Jurisdiction**

Pursuant to Section 13(b) of the Standard Agreement, this Agreement shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(a) of the Standard Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

## 17. Entire Agreement

This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

## 18. Payment Account Information

For Seller:
BANK NAME: HSBC Hong Kong
BANK ADDRESS: 1 Queen's Road Central, Hong Kong
A/C NO: 817-088388-838
SWIFT CODE: HSBCHKHHHKH IN FAVOUR OF: SPOT
ON SHIPPING LIMITED

For Buyer:
The Shanghai Commercial and Savings Bank, Ltd.
Offshore Banking Branch, Taipei
Swift code: SCSBTWTP027
Beneficiary: Renaissance Organization Inc.
A/C No.: 27-108000023998
Transferring Correspondent Bank:
The Chase Manhattan Bank, N.A. New York
Swift code: CHASUS33

## 19. Third party rights

(a) Unless provided to the contrary in this Agreement, a person who is not a party to this Agreement has no rights under the contract (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Agreement.

(b) Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 7(d) in the case of any Indemnified Person and clause 13 in case of any Broker.

(c) Notwithstanding any term of this Agreement, the consent of any person who is not a party to this Agreement is not required to rescind or vary this Agreement.

## 20. Inclusion of historical FFAs under Master Agreement

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 20 shall apply in accordance with its terms.

(b) This clause 20 applies to this Agreement and every other agreement entered into between parties to this Agreement (and no other persons) before the date of this Agreement:

(i) that expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms or the FFABA 2005 terms, (excluding for the avoidance of doubt terms as to the Contract Route(s), Contract Rate, Contract Quantity, Contract Month(s), Contract Period and Settlement Date), with or without amendment; and

(ii) that does not incorporate a clause substantially in the same form as this clause 20.

(c) Each agreement to which this clause 20 applies shall be treated as a confirmation (each a "Confirmation") under a master agreement (the "Master Agreement") constituted by the Standard Agreement as modified by, and in the form as incorporated in, the Agreement pursuant to clause 10 as if such an agreement has been entered into between parties on the terms of the Master Agreement on the date of the first such Confirmation.

(d) If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above and the agreement constituting a transaction to which this clause 20 applies, the provisions of the agreement constituting the transaction to which this clause 20 applies will prevail for the purposes of the transaction under such agreement.

(e) This clause 20 shall not affect the rights or obligations of the parties under any transaction accrued before the date of this Agreement.

(f) This clause 20 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such transaction.

## 21. Inclusion of subsequent FFAs under Master Agreement

(a) Unless the parties to this Agreement specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.

(b) This clause 21 applies to every agreement entered into between the parties to this Agreement (and no other persons) after an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 20) has been entered into by them.

(c) This Agreement shall constitute a Confirmation under the Master Agreement on the terms of clauses 20 (c), (d), (e) and (f) as if they were incorporated and fully set out in this clause 21 with appropriate and necessary modifications for such incorporation.

Signed for the Buyer by
[printed name]

Duly authorised signatory

Date .....................

[Company Seal or Stamp]

Signed for the Seller by
[printed name]

Duly authorised signatory

Date .....................

[Company Seal or Stamp]

**Trade Ref**   292580

ICAP Hyde Derivatives Ltd, 2 Broadgate, London, EC2M 7UR. Tel: +44(0)20 7532 4934 Fax: +44(0)20 7000 5942
Each of the Buyer and the Seller (the "counterparties") has agreed that ICAP Hyde Derivatives Limited is its broker for the sole purposes of 'passing names' and for confirming the details of the transaction set out above in accordance with accepted market practice. ICAP Hyde Derivatives Limited has arranged the transaction as name passing or introducing broker. Nothing in the transaction shall create any fiduciary or agency relationship between ICAP Hyde Derivatives Limited and either of the counterparties. Each of the counterparties agrees that no reliance has or may be placed by either of them on any representation made by ICAP Hyde Derivatives Limited, its directors, employees or agents. ICAP Hyde Derivatives Limited is not responsible for the provision of advice to any person in connection with the transaction. It is also not responsible for the exercise of any options. ICAP Hyde Derivatives Limited is not responsible for any other obligation or liability arising under the transaction and is not liable for the capacity, reliability, or performance of the counterparties with regard to the transaction; in particular, ICAP Hyde Derivatives Limited accepts no liability for the commercial advisability of the transaction. ICAP Hyde Derivatives Limited is not responsible for the failure by either of the above-named counterparties or any other person in supplying relevant information relating to the transaction, in properly documenting the transaction or in satisfying any legal requirements or taxation issues or conditions in relation thereto, including, without limitation, the obtaining of any necessary consents or the failure for whatever reason of completion of such transaction. Transaction times are available on request. ICAP Hyde Derivatives Limited is authorised and regulated by the Financial Services Authority. The transaction is subject to English law.

Please advise ICAP Hyde Derivatives Limited immediately if the details of this confirmation differ from your understanding.

**Trade Ref**   292580

# EXHIBIT 4

# ⚙ICAPHYDE

2 Broadgate, London EC2M 7UR. Tel: +44(0)20 7532 4934  Fax: +44(0)20 7000 5942

## Forward Freight Agreement Contract Settlement Advice

| | |
|---|---|
| **FFA Trade Reference:** | 292580 |
| **Trade Date:** | 21 March 2007 |
| **Buyer** | TAIWAN MARITIME TRANSPORT CO. LTD, TAIPEI |
| **Seller** | SPOT ON SHIPPING LIMITED |
| **Index Route:** | BCI TC, BCI TC - Baltic Capesize Index Average of Routes (8/9/10/11) |
| **Quantity** | 15 Days (half trade) |
| **Contract Rate** | US$ 78500.00 per Day |
| **Settlement Month** | April 2007 |
| **Settlement Rate:** | US$ 97384.6447 |
| **Settlement Amount:** | **US$ 283269.67** |

Under the terms of the above referenced FFA agreement, TMT are due to be paid US$ 283269.67 by Spot On

TMT should present their formal invoice without delay and Spot On must ensure that settlement funds reach their counterparty, in accordance with their invoice instructions, within five (5) business days - Tuesday 08 May 2007

Under the terms of the FFABA 2005 contract, when making settlement payment, all bank charges are for the account of the payer.

Both parties have agreed to pay us a commission at the time of the trade. Our formal invoice will follow shortly.

Kind Regards

2 BROADGATE, LONDON EC2M 7UR. TEL: +44(0)20 7532 4934  FAX: +44(0)20 7000 5942
ICAPHYDE LTD, has arranged the above trade for you as name-passing or introducing broker. ICAPHYDE LTD is not responsible for documentation of the transaction between the parties, nor are we, or have we been, responsible for the provision of advice to any person in connection with the above trade.  We are also not responsible for the exercise of any options. Please notify us immediately if you

 **TMT CO., LTD.**

12TH FL., NO. 167, FU HSIN N. RD.,
TAIPEI, TAIWAN, R.O.C.

TEL: (02)2718-7377
FAX: (02)2718-0136
TLG 17817 TMTCOLTD
E-MAIL operation@colonmail.com

| | |
|---|---|
| Messrs.: | Spot on Shipping Limited |
| Invoice Date: | 30-Apr-07 |
| Due Date: | 08-May-07 |

# Invoice

| Date | Contract No. | Route | Strike Price | Market | Qty (days) | Settle Day | P/L | Broker |
|---|---|---|---|---|---|---|---|---|
| 21/03/2007 | 292580 | BCITC | ####### | 97,364.6447 | 15 | 30/04/2007 | 283,269.67 | ICAP |
| | | | | | | **Total Due:** | **USD** 283,269.67 | |

Please remit above amount to the following bank account:

Beneficiary Bank : DNB NOR BANK ASA, SINGAPORE

Swift Code : DNBASGSG

Beneficiary : TMT CO., LTD. PANAMA S.A.

A/C NO.: 40418001

Transferring Correspondent Bank :

BANK OF NEW YORK, NEW YORK, USA.

ABA NO.: 021000018   SWIFT: IRVTUS3N



2 Broadgate, London, EC2M 7UR. Tel: +44(0)20 7532 4934  Fax: +44(0)20 7000 5942

## Forward Freight Agreement Contract Settlement Advice

| | |
|---|---|
| **FFA Trade Reference:** | 292580 |
| **Trade Date:** | 21 March 2007 |
| **Buyer** | TAIWAN MARITIME TRANSPORT CO. LTD, TAIPEI |
| **Seller** | SPOT ON SHIPPING LIMITED |
| **Index Route:** | BCI TC, BCI TC - Baltic Capesize Index Average of Routes (8/9/10/11) |
| **Quantity** | 15.5 Days (half trade) |
| **Contract Rate** | US$ 78500.00 per Day |
| **Settlement Month** | May 2007 |
| **Settlement Rate:** | US$ 107821.4048 |
| **Settlement Amount:** | **US$ 454481.77** |

Under the terms of the above referenced FFA agreement, TMT are due to be paid US$ 454481.77 by Spot On

TMT should present their formal invoice without delay and Spot On must ensure that settlement funds reach their counterparty, in accordance with their invoice instructions, within five (5) business days - Thursday 07 June 2007

Under the terms of the FFABA 2005 contract, when making settlement payment, all bank charges are for the account of the payer.

Both parties have agreed to pay us a commission at the time of the trade. Our formal invoice will follow shortly.

Kind Regards

Each of the Buyer and the Seller (the "counterparties") has agreed that ICAP Hyde Derivatives Limited is its broker for the sole purposes of 'passing names' and for confirming the details of the transaction set out above in accordance with accepted market practice. ICAP Hyde Derivatives Limited has arranged the transaction as name passing or introducing broker. Nothing in the transaction shall create



## TMT CO., LTD.

12TH FL., NO. 167, FU HSIN N. RD.,
TAIPEI, TAIWAN, R.O.C.

TEL.: (02)2718-7377
FAX: (02)2718-0136
TLX: 17617 TMTCOLTD
E.MAIL: operation@poloemail.com

| | |
|---|---|
| **Messrs.:** | Spot on Shipping Limited |
| **Invoice Date:** | 31-May-07 |
| **Due Date:** | 07-Jun-07 |

# Invoice

| Date | Contract No. | Route | Strike Price | Market | Qty (days) | Settle Day | P/L | Broker |
|---|---|---|---|---|---|---|---|---|
| 21/03/2007 | 292580 | BCITC | ####### | ########## | 15.5 | 31/05/2007 | 454,481.77 | ICAP |
| | | | | | | **Total Due:** USD | 454,481.77 | |

Please remit above amount to the following bank account:

Beneficiary Bank : DNB NOR BANK ASA, SINGAPORE

Swift Code : DNBASGSG

Beneficiary : TMT CO., LTD. PANAMA S.A.

A/C NO.: 40418001

Transferring Correspondent Bank :

BANK OF NEW YORK, NEW YORK, USA.

ABA NO.: 021000018   SWIFT: IRVTUS3N



2 Broadgate, London, EC2M 7UR. Tel: +44(0)20 7532 4934  Fax: +44(0)20 7000 5942

## Forward Freight Agreement Contract Settlement Advice

| | |
|---|---|
| **FFA Trade Reference:** | 292580 |
| **Trade Date:** | 21 March 2007 |
| **Buyer** | TAIWAN MARITIME TRANSPORT CO. LTD, TAIPEI |
| **Seller** | SPOT ON SHIPPING LIMITED |
| **Index Route:** | BCI TC, BCI TC - Baltic Capesize Index Average of Routes (8/9/10/11) |
| **Quantity** | 15 Days (half trade) |
| **Contract Rate** | US$ 78500.00 per Day |
| **Settlement Month** | June 2007 |
| **Settlement Rate:** | US$ 87572.5476 |

**Settlement Amount:**   **US$ 136088.21**

Under the terms of the above referenced FFA agreement, TMT are due to be paid US$ 136088.21 by Spot On

TMT should present their formal invoice without delay and Spot On must ensure that settlement funds reach their counterparty, in accordance with their invoice instructions, within five (5) business days – Friday 06 July 2007

Under the terms of the FFABA 2005 contract, when making settlement payment, all bank charges are for the account of the payer.

Both parties have agreed to pay us a commission at the time of the trade. Our formal invoice will follow shortly.

Kind Regards

Each of the Buyer and the Seller (the "counterparties") has agreed that ICAP Hyde Derivatives Limited is its broker for the sole purposes of 'passing names' and for confirming the details of the transaction set out above in accordance with accepted market practice. ICAP Hyde Derivatives Limited has arranged the transaction as name passing or introducing broker. Nothing in the transaction shall create

 TMT CO., LTD.

12TH FL., NO. 167, FU HSIN N. RD.,
TAIPEI, TAIWAN, R.O.C.

TEL.: (02)2718-7377
FAX: (02)2718-0136
TLX: 17817 TMTCOLTD
E-MAIL: operation@coionmail.com

| | |
|---|---|
| Messrs.: | Spot on Shipping Limited |
| Invoice Date: | 29-Jun-07 |
| Due Date: | 06-Jul-07 |

# Invoice

| Date | Contract No. | Route | Strike Price | Market | Qty (days) | Settle Day | P/L | Broker |
|---|---|---|---|---|---|---|---|---|
| 21/03/2007 | 292580 | BCITC | ####### | 87,572.5476 | 15 | 29/06/2007 | 136,088.21 | ICAP |
| | | | | | | Total Due: | USD 136,088.21 | |

Please remit above amount to the following bank account:

Beneficiary Bank : DNB NOR BANK ASA, SINGAPORE

Swift Code : DNBASGSG

Beneficiary : TMT CO., LTD. PANAMA S.A.

A/C NO.: 40418001

Transferring Correspondent Bank :

BANK OF NEW YORK, NEW YORK, USA.

ABA NO.: 021000018    SWIFT: IRVTUS3N

# EXHIBIT 5

The
Baltic
Exchange

**out word out bond**

Home

About Us

Venue Hire

Market Information

- Indices

- Fixtures

      Search

- Reports

Expert Witness

FFA

Member Information

Market Announcements

Joining the Baltic

Press Room

Key Contacts

JWILSON

INCE

My Account

Click here to log-out

## SEARCH PREVIOUS FIXTURES

| | |
|---|---|
| Date from | 26/03/2007   dd/mm/yyyy |
| Date to | 26/09/2007   dd/mm/yyyy |
| Fixture Type | Select... |
| Name | |
| Charterer | spot |
| DWT (min) | |
| DWT (max) | |
| Load Area | Select... |
| Load Port | |
| Route | |
| Order by | ⦿ Date    ○ Size |

Search

### Fixture Search Results

**26/03/2007 - 26/09/2007**

'Nord Steel' 2007 160000/10 Tubarao Qingdao 25 Sept/5 Oct $67.00 fio scale/25000sc - Spot
QDN reported~1-Sep-2007
'Nord-Energy' TMT reed. 2004 160000/10 Port Walcott Qingdao 8/16 Aug $21.00 fio scale/25000sc - Spot

http://www.balticexchange.com/default.asp?action=article&ID=559

The Baltic Exchange - Search Fixtures

On reported~27-Jul-2007
"Kassos Warrior" 1986 194744 dwt dely Kwangyang 10/15 July trip via West Australia redel China $75000 daily - Zhangjiang Shipping (Spot On) reported~5-Jul-2007
"Mineral Monaco" Constellation relet 2005 180263 dwt dely Pohang 31 May trip via West Australia redel China $100000 daily - Spot On reported~24-May-2007

Copyright (c) 2007 The Baltic Exchange Ltd., St Mary Axe, London, EC3A 8BH, United Kingdom
Tel + 44(0) 20 7283 9300, Fax + 44(0) 20 7369 1622
Registered in England Number 64795
Terms & Conditions & Data Policy
Page Reference : 559

# EXHIBIT 6

**From:**

**Sent:** 27 August 2007 10:55

**To:**

**Cc:**

**Subject:** FW: NORD-ENERGY/ZHANGGANG c/p 31/7/07

-----Original Message-----
From: Cosmos HK
Sent: Tuesday, July 31, 2007 2:30 PM
To: tmtop
Subject: NORD-ENERGY/ZHANGGANG c/p 31/7/07

From: Cosmos Shipbroking (HK) Ltd.
Tel          Fax:
Email:

Ref: 070731-WCW2732

JEFFERY/WAICHI

CC OPS

RE: MV NORD-ENERGY/ZHANGGANG C/P 31 JULY 07

RECAP OF FIXTURE AGREED BETWEEN OWS N CHTRS

FIXTURE TB KEPT STRICTLY PRIVATE AND CONFIDENTIAL

- MV NORD-ENERGY
  PAN FLAG
  BLT 2004 IMABARI
  D/W 180,310MT ON 18.171M SSW
  LOA 288.93M
  BEAM 45.00M
  TPC 121.0
  GRT 90085
  NRT 59287
  9 HO 9 HA
  7,053,271CBF GRAIN
  ALL BSS GOOD WEATHER UPTO/INCL BF4/DSS3 AND NO HEADCURRENT ON DESIGNED
  LOADED/BALLAST CONDITION:-
  ABT 14.6KN LADEN   ON ABT 62.50MTS HFO + ABT 0.5MTS MDO

ABT 15.6KN BALLAST ON ABT 62.50MTS IFO + ABT 0.5MTS MDO AND THAT SMALL QUANTITY OF MDO IN M/E AT SEA WHEN MANEUVERING IN SHALLW/NARROW WATERS,ENTERING AND LEAVING PORT AND IN HEAVY WEATHER. IN PORT CONS ABT 4.5MTS IFO AVERAGE + ABT 0.5MTS MDO, ALL DETS ABT

- CHTRS ZHANGGANG SHIPPING LIMITED

-- OWRS TMT BULK CO LTD TAIPEI

- 160,000/10 PCT MOLOO IRON ORE EXL HBI/DRI N LOAD IN ACCORDING WITH IMO REGULATIONS

- LOADING PORT: 1-2 SB(S) 1SP AT PORT WALCOTT,AUSTRALIA

- DISCHARGING PORT: 1/2 SB(S) 1SP AT QINGDAO OR RIZHAO, PRC INCHOPT

- LAY/CAN:  8-17 AUG 2007

- FRT : USD 21.00 PMT FIOST BSS 1/1 ON B/L QTTY

- 98 PERCENT FREIGHT PAYABLE TOGETHER WITH DEM/DESP IF ANY AT LOADING PORT WITHIN 3 HONG KONG BANKING DAYS AFTER COMPLETION OF LOADING AND SIGNING / RELEASING BILL(S) OF LADING. BILL(S) OF LADING TO BE MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY".

BALANCE FREIGHT TOGETHER WITH DEMURRAGE/DESPATCH AT DISCH PORT IF ANY TO BE SETTLED WITHIN 7 DAYS AFTER COMPLETION OF DISCHARGE.

FINAL BAL FRT TO BE SETTLED WITIN 20 DAYS AFTER DISCHARGE.

- DISCH/TERMS: 25,000 WMT/PWWD SHINC WZ TT 24HRS IUATUTC.

- DEM USD 90,000  PDPR/DHD LTS BENDS

- OWNERS GUARANTEE THIS VESSEL COMPLY WITH ALL REQUIREMENTS FROM SHIPPERS/RIGHTSHIP/RECEIVERS LISTED IN THE ATTACHED NOMINATION FORM/QUESTIONNAIRE

- OWNERS GUARANTEE THAT THE VESSEL IS FITTED FOR IRON ORE TRADE BETWEEN PORT WALCOTT,W.AUS AND CHINA AND GUARANTEE VESSEL CAN BE ACCEPTED BY PORT WALCOTT SHIPPERS ROBE RIVER AND RIGHTSHIP. OWNERS GUARANTEE THAT VESSEL/CREW/MASTER WILL COMPLIES WITH ALL LOADING AND DISCHARGING PORTS REGULATIONS AND HAVING ALL VALID CERTIFICATES ON BOARD ETC.

- ALL SURVEY REQUESTED BY PORT AUTHORITY/RIGHTSHIP/SHIPPERS TO BE FOR OWNERS RISK, TIME AND ACCOUNT.

- CHARTERERS AGENTS BENDS

- LOADPORT AND DISCH PORT D/A TO BE OWNS ACCT. BUT FOR DISCH PORT D/A lumpsum USD90,000, OWNRS TO REMIT USD90,000 DIRECTLY TO DISCH PORT AGT'S ACCT AT LEAST 5 CHINESE WORKING DAYS BEFORE VSL'S ARRIVL DISCH PORT. OTHERWISE ANY DELAY IN VSL'S BERTHING/DISCHARGING/PORT SCHEDULE WILL BE FOR OWNRS TIME, COST AND RISK.

- 3.75 PCT ADD + 1.25 PCT FR COSMOS

- OTHERWISE AS PER C/P OF MV CHINA STEEL RESPONSIBILITY/ZHANGANG CP DATE 16/MAR,2007 WITH FOLLG ALTERNATIONS AND LOGICAL AMENDENTS

-CL11.A.a delete 3rd para starting "atloading port...."
END


THANKS FOR SUPPORT


RGDS

# EXHIBIT 7

Mitsou Pinelopi

| | |
|---|---|
| From: | Dryfreight [dryfreight@icap.com] |
| Sent: | Thursday, May 10, 2007 12:18 PM |
| To: | Mitsou Pinelopi |
| Subject: | Spot On email from 30/03/2007 |

Please find below an email from Spot On which we originally sent to you on 30th March 2007, as requested.

Kind regards,


Paul Ingram
Dry FFA Desk



Direct Line: +44 20 7000 5357
Fax:        +44 20 7000 5942
Email:      paul.ingram@icap.com

ICAP Hyde Derivatives Limited
2 Broadgate
London
EC2M 7UR
United Kingdom

-----Original Message-----
From: SPOT ON - SAMMY [mailto:shipping@spoton-hk.com]
Sent: 30 March 2007 09:49
To: Sander Bots
Cc: dryfreight; shipping
Subject: re: SANDER / SAMMY

TO: ICAPHYDE / SANDER

PLS NOTE BLW THE IMPORTANT NOTICE WE GOT FROM "PEHW FUND LIMITED".

QTE

TO ALL:

Spot On Shipping Limited ("The Company") has been acquired at 100% equity by PEHW Fund Limited ("PEHW Fund"). So the operation of The Company will be under "PEHW Fund" afterwards and the official name for the purpose of ffa contract is "PEHW Asset Management Limited", which is a subsidiary company under "PEHW Fund Limited".

Although the ownership of The Company is separated from Spot On Group, Spot On Group will provide assistance to PEHW Fund in managing their FFA business.

UNQTE

ACCORDING TO THIS, PLS ICAPHYDE CHANGE THE SELLER'S NAME TO "PEHW ASSET MANAGEMENT LIMITED" IN ALL THE FFA CONTRACTS (THREE HALF Q2) CONCLUDED BY "SPOT ON SHIPPING LIMITED" BEFORE AND DELETE THE DETAILS REGARDING "SPOT ON SHIPPING LIMITED". AND SEND US THE REVISED THREE ORIGINAL CONTRACTS FOR SIGNATURE/STAMP.

B.RGDS
SAMMY YU

*********************************************************************"

# EXHIBIT 8

Zhanggang Shipping Limited

## Your instructions:

We were provide information on Zhanggang Shipping Limited. The main focus should be to name its past and present shareholders, directors and management, and we were also expected to provide some historical information on the company.

## Research:

Lloyd's MIU has been asked to report on Zhanggang Shipping Limited once before. That was on 16 June 2006 when we wrote a standard credit report on the company. These are the main extracts from that report:

*Operating Address:*

*Unit 5*
*31F Office Tower*
*Convention Plaza*
*1 Harbour Road*
*Wanchai*
*Hong Kong*

*Phone:* +852 21113866
*Fax:* +852 21113606
*Email:* shipping@spoton-hk.com
*Website: Not Available*

*Incorporation Style: Private limited company*

*Incorporation Date: 27 February 2006*

*Place Incorporated: Hong Kong*

*Ownership: A joint venture between Spot On (Hong Kong) Group Corporation Ltd and Zhangdian Steel Mill of China.*

*Directors: Mdm Wei-Lu Zhang - President*
*Managers: Ms Sammy Yu - Chartering Manager*

*Affiliate Offices: Spot On (Hong Kong) Group Corporation Ltd of the same address. Also an office in Qingdao, China.*

*Bankers: HSBC*

# EXHIBIT 9

存案 Filed

**CR**

公司註冊處
Companies Registry

周年申報表
Annual Return
(公司條例第 107(1)條)
(Companies Ordinance s. 107(1))

表格
Form **AR1**

重要事項　Important Notes

● 填表前請參閱（填表須知）。
　請用黑色墨水列印。
● Please read the accompanying notes before completing this form.
　Please print in black ink.

公司編號 Company Number

| 794937 |
|---|

**1**　公司名稱 Company Name

**SPOT ON (HONG KONG) GROUP CORPORATION LIMITED**
華熹 (香港) 集團股份有限公司

(註 Note 8)　**2**　商業名稱 Business Name

**3**　公司類別 Type of Company

請在有關空格內加 ✓ 號　Please tick the relevant box

☑ 有股本的私人公司
　Private Company having a share capital

☐ 其他
　Others

**4**　本申報表日期 Date of this Return
本申報表列載公司截至右列日期為止的資料
The information in this Return is made up to

| 24 | 04 | 2007 |
|---|---|---|
| 日 DD | 月 MM | 年 YYYY |

(如屬有股本的私人公司，本申報表須列載截至公司成立為法團的周年日期的
資料。如屬其他公司，所列載的資料則須截至公司周年大會日期或以代替周年
大會的書面決議的日期為止。
For a private company having a share capital, the information in this Return should
be made up to the anniversary of the date of incorporation. For other companies,
the information should be made up to the date of the annual general meeting
(AGM) or the date of written resolution passed in lieu of AGM.)

(註 Note 9)　**5**　註冊辦事處地址 Address of Registered Office

Suites 1818-1823, 18/F, Sun Hung Kai Centre, 30 Harbour Road, Wanchai, Hong Kong

(註 Note 10)　**6**　電郵地址 E-mail Address

(註 Note 3)　提交人的資料 Presentor's Reference

姓名 Name:　Acctax Company Secretary Limited

地址 Address: Suite 6307, 63/F, Central Plaza
　　　　　　　18 Harbour Road, Wanchai, Hong Kong

電話 Tel:　2246 6828　傳真 Fax:　2246 8448

電郵地址 E-mail Address:

檔號 Reference:

請勿填寫本欄 For Official Use



23400224768
AR1L　　　　　0794937
26/04/2007

說明編號 2/2004 (修訂) (2004 年 2 月)
Specification No. 2/2004 (Revision) (Feb. 2004)

表格 AR1
Form

公司編號 Company Number

794937

12  董事 Director

A. 個人董事 Individual Director
(如超過兩名個人董事，請用續頁 C 填報  Use Continuation Sheet C if more than 2 individual directors)

(註 Note 19)

1  身份          ☑ 董事              ☐ 候補董事        代替 Alternate to
   Capacity         Director            Alternate Director

中文姓名                            張瑋瑢
Name in Chinese

英文姓名        ZHANG                        Wei-lu
Name in English
                姓氏 Surname              名字 Other Names

前用姓名
Previous Names

別名
Alias

(註 Note 20)

住址
Residential
Address          Suites 1818-1823, 18/F, Sun Hung Kai Centre,      China
                 30 Harbour Road, Wanchai, Hong Kong

                                                                國家 Country

(註 Note 21)

電郵地址
E-mail Address

(註 Note 22)

身份證明 Identification
a  香港身份證號碼
   Hong Kong Identity Card Number

b  海外護照            The People's Republic of China      G06090087
   Overseas Passport
                     簽發國家 Issuing Country          號碼 Number

第五頁 Page 5

指明編號 2/2004 (修訂) (2004 年 2 月)
Specification No. 2/2004 (Revision) (Feb. 2004)

C500

# EXHIBIT 10

|SEARCH BLOG|| FLAG BLOG| Next Blog»

Create Blog | Sign In

# SHIP CHARTERING

THIS SITE AIMS TO INFORM READERS ON THE SHIPPING INDUSTRY WITH EMPHASIS ON SHIP CHARTERING, SALE AND PURCHASE OF VESSELS, BUNKER COST FOR SHIP OWNERS, SHIP BROKERS, CHARTERERS AND TRADERS AS WELL AS THE BALTIC INDEX

[ Google Search ]

◉ Web ○ shipchartering.blogspot.com

· Ads by Google·    Ship Agents    Dry Cargo Ship    General Cargo    Dredging Ship

FRIDAY, JULY 06, 2007

## The Baltic Dry Index Dry cargo fixture summary - 05 July

Dry cargo fixture summary - 05 July 2007

============================

BDI Baltic Dry Index 6251 DOWN 42

BCI Baltic Capesize Index 8001 DOWN 292

BPI Baltic Panamax Index 6878 UP 129

BSI Baltic Supramax Index 4092 UP 15

BHSI Baltic Handysize Index 1994 UP 8

Timecharter

------------

'Kassos Warrior' 1986 194744 dwt dely Kwangyang 10/15 July trip via West

Australia redel China $75000 daily - Zhanggang Shipping (Spot On)

'Alina II' 1986 179802 dwt dely Bayuquan 8/15 July 12 months trading

floating rate 14% below daily BCI 4 timecharter average - Oldendorff

'Pioneer' 2004 171861 dwt dely Nantong 16/18 July trip via West Australia

redel China $87000 daily - BHP Billiton

'China Fortune' 1992 152011 dwt dely Zhoushan 5/20 Aug 12 months trading

Generate revenue from your site with Google AdSense.

LABELS

Baltic Dry Index (242)

Bunker Prices (65)

Chartering Terms Definition (1)

Shipping Terms (2)

**Baltic Index**   Bunker

Bulk Shipping

Baltic dry sea freight index hits record high

Reuters UK

The Baltic index has been regularly breaking records in the last month on surging global raw materials demand and port congestion. ...

Polish press review - Companies & Business

Wirtualna Polska

OIL & GAS: Pipeline Construction Specialist Saipem to Build Baltic Sea Stretch of Nord Stream Pipeline - Italian pipeline construction specialist Saipem ...

Danish shares close lower, led down by financials; FLS, DFDS ...

CNNMoney.com

redel worldwide $75000 daily - North China Shipping

'Formosabulk Allstar' 1995 150395 dwt dely ex drydock China 15/30 Sept 12

months trading redel worldwide $75000 daily - Kleimar

'Medi Hong Kong' 2006 82790 dwt dely Kawasaki 13/15 July trip via

Australia redel Japan $59250 daily - MOSK

'Iron Brooke' Deiulemar relet 2007 82594 dwt dely Worldwide 2nd quarter

2008 2 years trading redel worldwide $40500 daily nett - Daiichi

'Filomena L' 2003 76629 dwt dely Rotterdam 8/12 July 3/4 months trading

redel worldwide $60500 daily - Transfield - <corrects the 04/07 report of

the Filomena Lembo fixing the business>

'CMB Italia' 2005 76620 dwt dely Fangcheng 12/13 July trip via EC

Australia redel EC India $57500 daily - cnr

'Pansolar' 2005 76343 dwt dely Stade 6/10 July trip via Ventspils redel

China $62000 daily - Noble

'Pansolar' 2005 76343 dwt dely Worldwide March/April 2008 3 years trading

redel worldwide $32000 daily - Japanese chrtr - <fixed last week>

'Perla Bulker' J.Lauritzen relet 2006 75949 dwt dely Tsuneishi 20/30 July

35/37 months trading redel worldwide $40000 daily gross - Alfred C.Toepfer

'North Prince' 1999 75542 dwt dely Dunkirk 8/12 July trip via Bolivar

redel Spain $60000 daily - Ark

'Anangel Enosis' 1995 75464 dwt - <reported 04/07 redel should read Jorf

Lasfar>

'Nordmosel' 2001 75323 dwt dely Qingdao 5/9 July trip via EC Australia

redel Singapore-Japan rge int coal $58500 daily - cnr

The Baltic Dry Index over bulk transport rates hit a new all-time high today, they added. AP Moller-Maersk A fell 1300 to 68400 and the B-shares were 1100 ...

Thai Hot Stocks - Shipping firms, NNCL, Seafco up, TWZ down
Reuters UK
The Baltic Dry Index (.BADI: Quote, Profile, Research), which covers dry bulk shipping rates, was up 1.4 percent at 8429 at 0338 GMT. ...

powered by Google™

Ads by Google

International Shipping
Packaging, Crating & Transport
Request a Quote Today
www.CratersAndFreighter

Small Ship, Barge Experts
Over 50 vessels worldwide Save on small ship & barge cruises
www.WorldWaterways.cor

Mississippi Admiralty Law
Onshore Drilling Rig Accidents And Offshore Platform Accidents.
www.usagulf.com

Maritime Institute
Your one-stop location for maritime professional training & simulation
www.mitags.org

BLOG ARCHIVE

'Nordems' 2001 75253 dwt dely Worldwide 1 Jan/30 Feb 2008 2 years trading

redel worldwide $39500 daily - Augustea

'Tian Du Feng' 2001 74201 dwt dely Cape Passero 11/14 July 5/7 months

trading redel worldwide $56000 daily - United

'Riruccia' 1997 74002 dwt - <reported 04/07 the charterer is Deiulemar>

'Carl Mesem' 1999 74001 dwt dely Sete 10/20 July trip via EC South

America redel China $59000 daily - Noble

'Beauty Donor' Worldlink relet 1999 73700 dwt dely Antwerp ely Aug

balance of period 3/4 months trading redel worldwide $55000 daily - Oldendorff

'Pacific Paradise' 1993 73645 dwt dely Lumut 8/13 July trip via Indonesia

redel Taiwan $58500 daily - Ta-Ho

'Dimitris L' STX Pan Ocean relet 2001 73193 dwt dely Barcelona 20/30 July

9/10.5 months trading redel worldwide $49500 daily - GMI

'Proteus' 1999 73018 dwt dely Phu My 11/13 July 6/8 months trading redel

worldwide $52000 - Daebo

'Silver One' STX Pan Ocean relet 2000 72917 dwt dely Beilun 7/9 July trip

via NoPac redel Singapore-Japan rge $54000 daily - Dreyfus

'Giovanni' Crownland relet 1996 72394 dwt dely Dunkirk 28/30 July balance

of period 28 Jan/28 Feb 2008 redel worldwide $53750 daily - Brittania

Bulk

'C.Iris' 1996 71393 dwt dely Nanao 15/22 July 5.5/7 months trading redel

worldwide $51500 daily - Atlas Bulk Shipping

'Quesa Uno' 1993 70312 dwt dely Maizuru 14/19 July trip via NoPac redel

▼ 2007 (308)

▼ September (33)

The Baltic dry index as of 14.sept.07

Today's Bunker Prices 14/09/2007

THE BALTIC DRY INDEX DAILY FIXTURES REPORT 14/09/...

Today's Bunker Prices 13/09/2007

The Baltic Dry Index T/C report 13/09/07

The Baltic Dry index as of 13.sept.07

THE BALTIC DRY INDEX THE DAILY FIXTURES REPORT 13...

The Baltic dry index as of 12.sept.07

Today's Bunker Prices 12/09/2007

Today's Bunker Prices 11/09/2007

Today's Bunker Prices 10/09/2007

The Baltic Dry Index TC 12/09/2007

THE BALTIC DRY INDEX 12/09/2007

The Baltic Dry Index T/C report 11/09/07

THE BALTIC DRY INDEX THE DAILY FIXTURES REPORT 11/...

THE BALTIC DRY INDEX AS OF 10.Sept.07

The Baltic Dry Index Daily Panamax Report 10th Sep...

The Baltic Dry index as of 11.sept.07

THE BALTIC DRY INDEX THE DAILY FIXTURES REPORT 10/...

Today's Bunker Prices

Singapore-Japan rge $53500 daily - Dreyfus

'Powerful' 1993 70083 dwt dely Tilbury ppt 2 years trading redel

worldwide $39000 daily - Alfred C.Toepfer

'Hellenic Breeze' 1993 69601 dwt dely Sparrows Point 18/20 July 6/8

months trading redel worldwide $53000 daily + $700000 bb - cnr

'Mass Wits' 1988 69356 dwt dely US Gulf 27/29 July redel Far East $54000

daily + $1.00 million bb – Dreyfus

'Citrawati' 1990 69332 dwt dely Kalimantan spot trip via Indonesia redel

Taiwan $54000 daily - Daebo

'Yun Tong Hai' 1990 68788 dwt dely Worldwide 1/30 Sept period up to 25

Sept-10 Oct min 2008/max 10 Nov/21 Dec 2008 redel worldwide $43000 daily

- cnr

'Hebei Diamond' relet 1984 66786 dwt dely Kaohsiung 20/25 July balance of

period 8 Nov/7 Dec redel worldwide $43000 daily - Armada

'Trust Jakarta' Industrial Carriers relet 1984 64873 dwt - <reported

04/07 the charterer is Azure>

'Navios Astra' 2006 53468 dwt dely China 1/10 August 2 years trading

redel worldwide approx $36000 daily - Dreyfus USA

'Frontier Angel' SK Shipping relet 2001 52478 dwt dely worldwide 1/15

September 14/16 months trading redel worldwide $40000 daily - Wylex

'D Duckling' 2001 52068 dwt dely dop ARA 17/25 July about 2/about 4

months trading redel worldwide $46100 daily - cnr

'Harrier' 2001 50296 dwt dely Longkou spot trip via Indonesia redel China

approx $37500 daily - cnr

Ore

07/09/07
Today's Bunker Prices
06/09/07
Today's Bunker Prices
05/09/07
THE BALTIC INDEX THE DAILY FIXTURES REPORT 07/09/0...
The Baltic Dry cargo fixture summary - 06 Sept
The Baltic Dry index as of 6.sept.07
THE BALTIC DRY INDEX THE DAILY FIXTURES REPORT 06/...
The Baltic Dry index as of 5.sept.07
The Baltic Dry Index Dry cargo fixture summary - 0...
THE BALTIC DRY INDEX THE DAILY FIXTURES REPORT 05...
Today's Bunker Prices 4th September 2007
The Baltic Dry index as of 3.sept.07
THE BALTIC DRY INDEX DAILY FIXTURES REPORT 03/09/...
Today's Bunker Prices 03/09/07

▶ August (53)
▶ July (58)
▶ June (44)
▶ May (45)
▶ April (75)
▶ 2006 (24)

ABOUT ME

SHIPBROKER

I am involved in the buying and selling of existing or new ships as well as used ships. brokers discuss

Case 1:07-cv-10277-PAC    Document 1-11    Filed 11/13/2007    Page 6 of 7

---

'Mineral London' Cosco 2006 160000/10 Sepetiba/Qingdao 20/30 July $52.00

(done direct) fio scale/30000sc - Transfield

'Alpha Effort' EdF relet 1999 70000/10 Port Cartier/Gijon 13/23 July

$21.50 fio 4 days - Mittal

POSTED BY SHIPBROKER AT 2:30 PM

LABELS: BALTIC DRY INDEX

## LINKS TO THIS POST

Create a Link

Newer Post                          Home                          Older Post

opportunities and market trends with shipowners, report on sales, value vessels, calculate freight earnings, advise on finance and try to find ships for specific employment opportunities. When a ship is sold brokers usually negotiate on behalf of the buyer and seller on price and terms and also provide a route to resolving any disputes which might arise. I also do Cargo Brokering as part of my job acting as intermediary between a charterer, who owns the cargo, and a shipowner. I assist charterers and shipowners in negotiating the terms and conditions of the movement of cargo.

VIEW MY COMPLETE PROFILE



Lloyd's Maritime Atlas of World Port...
Lloyd's Register

Buy New



Privacy Information



Maritime Economics
Second Edition
M. Stopford
Best Price $48.70
or Buy New $59.68

Privacy Information



Marine Environment Law
John H. Bates, Cha...
Best Price $638.00
or Buy New $638.00



Privacy Information

**Overseas Shipping**
Reliable & Competitive Shipping USA to
Worldwide Ph: 1800 631 6881

**Small Ship, Barge Experts**
Over 50 vessels worldwide Save on small
ship & barge cruises

Ads by Google

Ads by Google    Dry Cargo Shipping        Dry Bulk        Cargo Vessel    Cargo Container Home        Dry Duck